**10 CIV 3799 (VM)**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JERMAINE NIBBS,

Plaintiff,

- against -

DET. GEORGE GOULART, Shield No. 5792, Individually and in his Official Capacity and
UNDERCOVER OFFICER # 0077, Individually and in his Official Capacity,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW

## IN SUPPORT OF THEIR MOTIONS *IN LIMINE*

***MICHAEL A. CARDOZO***
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Raju Sundaran*
*Tel:  (212) 788-0467*
*Matter No. 2010-020583*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ............................................................................ 1

POINT I

PLAINTIFF SHOULD BE PRECLUDED FROM QUESTIONING OR OFFERING ANY EVIDENCE OF THE OFFICERS' DISCIPLINARY HISTORIES ................................ 3

POINT II

PLAINTIFF SHOULD BE PRECLUDED FROM QUESTIONING OR OFFERING ANY EVIDENCE OF THE OFFICERS' PERSONNEL FILES ............................................................................ 7

POINT III

PLAINTIFF SHOULD BE PRECLUDED FROM QUESTIONING OR OFFERING ANY EVIDENCE OF UNRELATED, PRIOR LAWSUITS AGAINST THE OFFICERS ................... 8

POINT IV

PLAINTIFF SHOULD BE PRECLUDED FROM QUESTIONING OR OFFERING ANY EVIDENCE OF THE OFFICER'S ANNUAL SALARY HISTORY ................................................ 9

POINT V

PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING ANY EVIDENCE OF NON-PARTY OFFICERS' MEMOBOOK ENTRIES ....................... 10

POINT VI

PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING INTO EVIDENCE CRIMINAL COURT DOCUMENTS ......................................... 11

**Page**

POINT VII

    PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING INTO EVIDENCE DISTRICT ATTORNEY'S DOCUMENTS ...................................................... 12

POINT VIII

    PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING NON-PARTY WITNESSES PETER ZADEK, ESQ. AND SUBWAY AND FIREHOUSE DELI EMPLOYEES ........................................... 13

POINT IX

    DEFENDANTS SHOULD BE PERMITTED TO INTRODUCE EVIDENCE OF, AND EXAMINE PLAINTIFF ON, HIS ARREST AND CONVICTION HISTORY ................................................ 14

    A.   Damages ................................................................ 15

    B.   Impeachment ........................................................ 18

    C.   Rebuttal................................................................ 20

POINT X

    DEFENDANTS SHOULD BE PERMITTED TO INTRODUCE EVIDENCE OF, AND EXAMINE PLAINTIFF ON, HIS USE OF ALIASES AND FALSE DATES OF BIRTH ................................................ 21

POINT XI

    DEFENDANTS SHOULD BE PERMITTED TO REFER TO AND INTRODUCE EVIDENCE OF PLAINTIFF'S MARIJUANA USE........................................... 22

CONCLUSION........................................................................... 24

# TABLE OF AUTHORITIES

**Cases**                                                                 **Pages**

Banushi v. P.O. Palmer,
  2011 U.S. Dist. LEXIS 419 (E.D.N.Y. Jan. 4, 2011) ...............................................17

Berkovich v. Hicks,
  922 F.2d 1018 (2d Cir. 1991) .......................................................................4, 5, 6, 8

Brundidge v. City of Buffalo,
  79 F. Supp. 2d 219 (W.D.N.Y. 1999).......................................................................18, 21

Burke v. Spartantics,
  252 F.3d 131 (2d Cir. 2001) .......................................................................................22

Daniels v. Loizzo,
  986 F. Supp. 245 (S.D.N.Y. 1997) ......................................................................18, 19

Ellis v. City of New York,
  06 Civ. 4827 (S.D.N.Y. June 18, 2007).....................................................................17

Fletcher v. City of New York,
  54 F. Supp. 2d 328 (S.D.N.Y. 1999) .................................................................21, 23

Graham v. Conner,
  490 U.S. 386 (1989)..................................................................................................4, 5

Hernandez v. Kelly,
  2011 U.S. Dist. LEXIS 57114 (E.D.N.Y.  May 27, 2011) .......................................23

Huddleston v. United States,
  485 U.S. 681 (1988)..................................................................................................4, 9

Jean-Laurent v. Wilkinson,
  2009 U.S. Dist. LEXIS 20472 (S.D.N.Y. Mar. 13, 2009) ...................................21, 22

Kerman v. City of New York,
  374 F.3d 93 (2d Cir. 2004) ....................................................................................16

Lennon v. Miller,
  66 F.3d 416 (2d Cir. 1995) .......................................................................................5

Lewis v. Velez,
  1993 U.S. Dist. LEXIS 6586 (S.D.N.Y. May 19, 1993) ...........................................19

Lombardo v. Stone,
  2002 U.S. Dist. LEXIS 1267 (S.D.N.Y. Jan. 29, 2002) ........................................4, 6

<u>**Cases**</u>                                                                                      <u>**Pages**</u>

<u>Lyda v. United States,</u>
   321 F.2d 788 (9th Cir. 1963) ...................................................................21

<u>Mistretta v. Prokesch,</u>
   5 F. Supp. 2d 128 (E.D.N.Y. 1998) ......................................................10

<u>Picciano v. McLoughlin,</u>
   2010 U.S. Dist. LEXIS 114704 (N.D.N.Y. Oct. 28, 2010) ...............17, 18

<u>Schiller v. City of New York,</u>
   2006 U.S. Dist. LEXIS 88854 (S.D.N.Y. Dec. 7, 2006) .......................17

<u>Sedney v. Blot,</u>
   2003 U.S. Dist. LEXIS 21364 (S.D.N.Y. Dec. 1, 2003) .......................21

<u>Shaw v. City of New York,</u>
   1997 U.S. Dist. LEXIS 4901 (S.D.N.Y. Apr. 15, 1997) ...................4, 6, 8

<u>Sims v. Blot,</u>
   354 Fed. Appx. 504 (2d Cir. 2009).........................................................20

<u>Solange Ltd. v. Lane Bryant, Inc.,</u>
   2000 U.S. App. LEXIS 1857 (2d Cir. 2000) ........................................14

<u>Stephen v. Hanley,</u>
   2009 U.S. Dist. LEXIS 43334 (E.D.N.Y. May 21, 2009) .........................5

<u>Stokes v. City of New York,</u>
   2007 U.S. Dist. LEXIS 32787 (E.D.N.Y. May 3, 2007) ........................10

<u>Tanberg v. Sholti,</u>
   401 F.3d 1151 (10th Cir. 2005) ..............................................................5

<u>Thompson v. City of New York,</u>
   2006 U.S. Dist. LEXIS 4797 (S.D.N.Y. Feb. 7, 2006).........................6, 8

<u>United States v. Benedetto,</u>
   571 F.2d 1246 (2d Cir. 1978) ..............................................................4, 6

<u>United States v. Brennan,</u>
   798 F.2d 581 (2d Cir. 1986) .....................................................................4

<u>United States v. Feola,</u>
   651 F. Supp. 1068 (S.D.N.Y. 1987) .......................................................19

**Cases**                                                          **Pages**

United States v. Hayes,
   553 F.2d 824 (2d Cir. 1977) ..................................................................19

United States v. Margiotta,
   662 F.2d 131 (2d Cir. 1981) ...................................................................4

United States v. Ortiz,
   553 F.2d 782 (2d Cir. 1977) ..................................................................19

Wallace v. Hano,
   1992 U.S. Dist. LEXIS 13388 (S.D.N.Y. Sep. 3, 1992).........................6

Whren v. United States,
   517 U.S. 806 (1996).................................................................................9

Wilson v. City of New York,
   2006 U.S. Dist. LEXIS 90050 (E.D.N.Y. Dec. 13, 2006) ....................17

Young v. Calhoun,
   1995 U.S. Dist. LEXIS 4555 (S.D.N.Y. Apr. 7, 1995) ....................19, 21

**Statutes**

Fed. R. Civ. P. 37............................................................................................14

Fed. R. Evid. 402 ..................................................................................... passim

Fed. R. Evid. 403 ..................................................................................... passim

Fed. R. Evid. 404 ..................................................................................... passim

Fed. R. Evid. 608 ..................................................................................... passim

Fed. R. Evid. 609 ..................................................................................... passim

Fed. R. Evid. 611 ..............................................................................8, 9, 10, 11

Fed. R. Evid. 802 ..................................................................................... passim

Fed. R. Evid. 901 ..............................................................................10, 11, 12, 13

**Treatises**                                                                                               **Pages**

Wright & Graham, <u>Federal Practice & Procedure: Evidence:</u> §5240.............................................4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------- x

JERMAINE NIBBS,

                                  Plaintiff,

                   -against-

DET. GEORGE GOULART, Shield No. 5792,
Individually and in his Official Capacity and
UNDERCOVER OFFICER # 0077, Individually and in his
Official Capacity,

                                 Defendants.
--------------------------------------------------------------------- x

**DEFENDANTS'
MEMORANDUM OF LAW
IN SUPPORT OF THEIR
MOTIONS *IN LIMINE***

10 CIV 3799 (VM)

## PRELIMINARY STATEMENT

Plaintiff Jermaine Nibbs ("plaintiff") brings this action against defendants Detective George Goulart ("Goulart") and Undercover Officer # 0077 ("UC#0077") (collectively, "defendants") pursuant to 42 U.S.C. § 1983, alleging violations of his federal civil rights. Specifically, plaintiff alleges, among other things, that he was falsely arrested on December 23, 2009, and subsequently maliciously prosecuted.

Defendants now bring these motions *in limine* in anticipation of the trial and respectfully submit this memorandum of law in support of their motions seeking the following *in limine* relief:

    (1)     Officers' Disciplinary History – Plaintiff should be precluded from questioning or offering any evidence of disciplinary histories for Goulart, UC#0077, and non-party Sergeant Edward Wynne ("Wynne"), including but not limited to Civilian Complaint Review Board ("CCRB") complaints, Internal Affairs Bureau ("IAB") investigations, Central Personnel Index ("CPI") entries, or any other alleged prior bad acts;

(2)     Officers' Personnel File – Plaintiff should be precluded from questioning or offering any evidence contained in the personnel files of Goulart, UC#0077, and Wynne, including but not limited to performance evaluations or employment applications;

(3)     Unrelated Lawsuits Against Officers – Plaintiff should be precluded from questioning or offering any evidence of unrelated, prior lawsuits against Goulart, UC#0077, and Wynne;

(4)     Officers' Annual Salary History – Plaintiff should be precluded from questioning or offering any evidence of Goulart's annual salary history;

(5)     Officers' Memobook Entries – Plaintiff should be precluded from offering any evidence of memobook entries for non-parties Detective Odalis Perez ("Perez"), Undercover Officer #0087 ("UC#0087"), Detective Victor Navarro ("Navarro"), Detective Paul Bello ("Bello"), and Detective Jose Peinan ("Peinan");

(6)     Criminal Court Documents – Plaintiff should be precluded from offering any evidence of the Certificate of Disposition and Criminal Court Action Sheet;

(7)     District Attorney Documents – Plaintiff should be precluded from offering any evidence contained in the District Attorney Folder, Criminal Justice Agency Interview Report, Grand Jury Notice, Discovery Responses, and Asset Forfeiture Documents;

(8)     Plaintiff's Witnesses – Plaintiff should be precluded at trial from offering non-party witnesses Peter Zadek, Esq. and Employees of Subway and Firehouse Deli;

(9)     Plaintiff's Arrest and Conviction History – Defendants should be permitted to introduce evidence of, and examine plaintiff on, all of his prior and subsequent arrests and convictions;

(10)    Plaintiff's Use of Aliases and False Dates of Birth – Defendants should be permitted to introduce evidence of, and examine plaintiff on, his use of aliases and false dates of birth; and

(11)    Plaintiff's Drug Use – Defendants should be permitted to refer to and question plaintiff on his marijuana use.

## POINT I

### PLAINTIFF SHOULD BE PRECLUDED FROM QUESTIONING OR OFFERING ANY EVIDENCE OF THE OFFICERS' DISCIPLINARY HISTORIES.

Plaintiff should be precluded from questioning or offering any evidence of disciplinary histories, or other alleged prior bad acts of defendants Goulart and UC#0077, as well as of Wynne, pursuant to Rule 402, 403, 404(b), 608, and 611. As disclosed to plaintiff during discovery in this action, Goulart, UC#0077, and Wynne have no substantiated allegations involving false arrest, malicious prosecution, or false statements within the past ten years. Therefore, any evidence of prior, unsubstantiated disciplinary complaints against these police officers is irrelevant, prejudicial, confusing, a waste of time, and would likely be used to show an alleged propensity of the police officers, and further result in harassment and embarrassment to them.

Rule 404(b) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . ." Fed. R. Evid. 404(b). However, past bad act evidence is not automatically admissible simply because the proponent has articulated some not-for-character purpose to which the evidence could be put; Rule 403 also comes into

play. As the Supreme Court held in <u>Huddleston v. United States</u>, 485 U.S. 681, 688 (1988), the decision to admit evidence under Rule 404(b) depends on also "whether the danger of unfair prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under Rule 403."

Thus, Rule 404(b) "requires a two-part analysis: first, whether the proposed evidence fits within one of the 'exceptions' provided by the Rule, and second, even if it does, whether under Rule 403, the evidence's probative value is substantially outweighed by the potential for jury confusion or prejudice." <u>Shaw v. City of New York</u>, No. 95 Civ. 9325 (AJP), 1997 U.S. Dist. LEXIS 4901, at *16-19 (S.D.N.Y. Apr. 15, 1997); <u>see</u>, <u>e.g.</u>, Advisory Committee Notes to Fed. R. Evid. 404(b); <u>Lombardo v. Stone</u>, No. 99 Civ. 4603 (SAS), 2002 U.S. Dist. LEXIS 1267, at *10-12, 15-16 (S.D.N.Y. Jan. 29, 2002); <u>United States v. Benedetto</u>, 571 F.2d 1246, 1248 (2d Cir. 1978); <u>United States v. Brennan</u>, 798 F.2d 581, 589 (2d Cir. 1986); <u>United States v. Margiotta</u>, 662 F.2d 131, 142 (2d Cir. 1981); <u>Berkovich v. Hicks</u>, 922 F.2d 1018, 1022 (2d Cir. 1991); Wright & Graham, <u>Federal Practice & Procedure: Evidence</u> § 5240 at 472 ("even if the evidence falls within one of the traditional exceptions [in Rule 404(b)], the trial judge may still exclude it on the discretionary grounds listed in Rule 403"). In this case, first, the introduction of the officers' disciplinary histories does not fall under any of the 404(b) exceptions. Second, the potential for confusion or prejudice substantially outweighs any probative value. Applying these factors, plaintiff should be precluded from questioning the police officers regarding their disciplinary histories.

Here, the pertinent exceptions under Rule 404(b) for which plaintiff may seek to use evidence of prior bad acts are "proof of motive" or "intent" on the part of defendants and Wynne. However, as the Supreme Court held in <u>Graham v. Conner</u>, 490 U.S. 386, 394-97 (1989), motive

and intent -- in this case to falsely arrest and maliciously prosecute plaintiff -- are irrelevant to the standard that governs the Fourth Amendment and § 1983 claims. The Court in Graham held that the test for a Fourth Amendment claim is one of objective reasonableness, and is to be applied without regard to the defendant officer's underlying intent or motivation. Id.; Lennon v. Miller, 66 F.3d 416, 423-25 (2d Cir. 1995). Thus, evidence of prior complaints proffered to show the defendants' motive or intent to violate plaintiff's constitutional rights is irrelevant and, therefore, inadmissible under Rules 402 and 404(b). See Stephen v. Hanley, No. 03 Civ. 6226 (KAM), 2009 U.S. Dist. LEXIS 43334, at *20, n.2 (E.D.N.Y. May 21, 2009) (where defendant officers sought to introduce evidence of dropped resisting arrest charge against plaintiff to show their subjective beliefs, the court excluded evidence because the Fourth Amendment's objective reasonableness test made officers' intent irrelevant); see also Tanberg v. Sholti, 401 F.3d 1151, 1167-68 (10th Cir. 2005) (affirming trial court's exclusion of evidence of three other occasions in which defendant officer allegedly arrested persons without probable cause or used excessive force, reasoning that officer's personal motivations in arresting and using force on plaintiff were irrelevant under the Fourth Amendment's objective reasonableness standard).

Moreover, with respect to false arrest claims brought under the Fourth Amendment in § 1983 cases, the Second Circuit has uniformly held that evidence of an officer's past bad acts are only admissible under Rule 404(b) if the alleged past bad act has a close nexus with the acts complained of by plaintiff in his complaint. Berkovich, 922 F.2d at 1022. In Berkovich, plaintiff sought to introduce a police officer's past CCRB complaints to prove a "pattern of conduct" on the part of the officer with respect to, among other things, plaintiff's false arrest claims. Id. In upholding the trial court's exclusion of the CCRB complaints, the Second Circuit held that "[t]o merit admission under this theory, the extrinsic acts must share 'unusual characteristics' with the

act charged or represent a 'unique scheme.'" Id. at 1022-23 (quoting Benedetto, 571 F.2d at 1249); see also Wallace v. Hano, No. 90 Civ. 2064 (WK), 1992 U.S. Dist. LEXIS 13388, at *19-21 (S.D.N.Y. Sep. 3, 1992) (prior bad acts claimed to be a "pattern of conduct" must be distinctive enough to form a signature). Though the CCRB complaints at issue in Berkovich were unsubstantiated, the Court made it clear that even "[a]ssuming the seven prior complaints could be proved, they do not show the kind of *modus operandi* claimed in this case." 922 F.2d at 1022-23.

Here, it cannot be said that any of the officers' disciplinary histories or other prior bad acts fall within the exceptions of Rule 404(b). Plaintiff may seek to proffer such evidence in an attempt to demonstrate that Goulart, UC#0077, and Wynne had the propensity to commit such acts and that they acted in conformity with that propensity by falsely arresting and maliciously prosecuting plaintiff. However, such a proffer would "amount[] to no more than a veiled attempt to do what Rule 404(b) expressly prohibits." Berkovich, 922 F.2d at 1022; see also Thompson v. City of New York, No. 05 Civ. 3082 (PAC), 2006 U.S. Dist. LEXIS 4797, at *6 (S.D.N.Y. Feb. 7, 2006) (if admitted, unsubstantiated CCRB complaints would impermissibly show that, because defendant was previously investigated for the alleged conduct, "the fact-finder should believe plaintiff over defendant" – a use of evidence "that Rule 404(b) is designed to prevent"); Shaw, 1997 U.S. Dist. LEXIS 4901, at *18-20 (finding IAD report inadmissible under Rule 404(b)); Lombardo, 2002 U.S. Dist. LEXIS, at *9 (holding that disciplinary records are inadmissible). For this reason alone, plaintiff should be precluded from proffering any evidence regarding disciplinary histories or other alleged prior bad acts of Goulart, UC#0077, and Wynne.

Moreover, in addition to the lack of relevance under Rule 402, evidence of disciplinary histories or other prior bad acts would also be, if admitted, extremely prejudicial and serve to

confuse and mislead the jury in violation of Rule 403. The jury could choose to punish defendants for unproven prior acts rather than addressing the merits of the alleged acts in this action. The jury may also infer misconduct by the mere fact that a prior complaint was filed. Defendants have produced, during discovery, various documents containing disciplinary information of Goulart, UC#0077, and Wynne, but none of them contained any substantiated allegations of similar nature to plaintiff's complaint or of false statements. Additionally, during depositions, plaintiff inquired into Goulart's, UC#0077's, and Wynne's prior disciplinary histories, and they all stated that they had no substantiated complaints filed against them. Plaintiff is thus bound by their answers and should not be permitted to inquire any further, because it would not be in good faith or probative to the issues at hand, and will only serve to prejudice defendants. Trial should not be used as a fishing expedition to harass and embarrass police officers, as well as taint their reputation with prior, unsubstantiated disciplinary histories, resulting in also possibly tainting the jury.

## POINT II

### PLAINTIFF SHOULD BE PRECLUDED FROM QUESTIONING OR OFFERING ANY EVIDENCE OF THE OFFICERS' PERSONNEL FILES.

Defendants object, pursuant to Fed. R. Evid. 402, 403, 404(b), 608, and 611, to plaintiff questioning or offering any evidence regarding the personnel files of Goulart, UC#0077, and Wynne, including but not limited to their performance evaluations and employment applications. Such information is not only irrelevant to plaintiff's claims under Rule 402, but if admitted, would be extremely prejudicial, and confuse the jury in violation of Rule 403.  Because the City is no longer a defendant in this case, and because plaintiff has no viable claim for *respondeat superior*, personnel files and performance evaluations will have no relevance to the issues at

hand, and would only serve as propensity evidence specifically prohibited by Rule 404(b). In addition, such evidence serves only to cause undue embarrassment and harassment to Goulart, UC#0077, and Wynne in violation of Rule 611. Therefore, questioning or offering into evidence any information contained in the personnel files of Goulart, UC#0077, and Wynne should be precluded pursuant to Rules 402, 403, 404(b), 608, and 611.

**POINT III**

**PLAINTIFF SHOULD BE PRECLUDED FROM QUESTIONING OR OFFERING ANY EVIDENCE OF UNRELATED, PRIOR LAWSUITS AGAINST THE OFFICERS.**

Evidence of unrelated lawsuits against Goulart, UC#0077, and Wynne in this matter are inadmissible under Rules 402, 403, 404(b), 608, and 611 because such information is not relevant, more prejudicial than probative, cause juror confusion, will only be used to prove that these police officers had a propensity to allegedly violate plaintiff's constitutional rights, and further cause embarrassment and harassment to them. Therefore, plaintiff should be precluded from questioning or offering any evidence of the officers' prior lawsuits.

In accordance with Rule 404(b), plaintiff is not permitted to introduce evidence of prior, and certainly not of subsequent, lawsuits against defendants and Wynne in order to prove an alleged propensity to violate his constitutional rights. See Berkovich, 922 F.2d at 1022 (upholding the exclusion at trial of all references to the defendant police officers' history of prior civilian complaints pursuant to Rules 404(b) and 403); see also, Thompson, 2006 U.S. Dist. LEXIS 4797, at *6 (same); Shaw, 1997 U.S. Dist. LEXIS 4901, at *18 (same).

Evidence of prior lawsuits is more prejudicial than probative, and thus should be excluded pursuant to Rule 403 as well. If plaintiff is permitted to inquire about unrelated lawsuits, defendants would need to offer evidence in defense of mere allegations, resulting in

"mini-trials" that would only lengthen this trial, waste time, and confuse the issues. Moreover, as with prior civilian complaints, the jury could choose to punish the defendants for unproven allegations contained in the other lawsuits, or could infer that the defendants are inclined to violate civil rights by virtue of the existence of unrelated lawsuits against them. See Huddleston, 485 U.S. at 686 ("[t]he [offering party] may not parade before the jury a litany of potentially prejudicial similar acts that have been established or connected to the defendant only by unsubstantiated innuendo"). Additionally, similar act evidence "should be admitted only if there is sufficient evidence to support a finding by the jury that the defendant committed the similar act." Id. at 685.  Because evidence of unrelated, unsubstantiated lawsuits would lack substantial probative value, it should be excluded.

For these reasons, plaintiff should not be permitted at trial to introduce into evidence, or inquire about, prior lawsuits brought against Goulart, UC#0077, and Wynne under Rules 402, 403, 404(b), 608, and 611.

**POINT IV**

**PLAINTIFF SHOULD BE PRECLUDED FROM QUESTIONING OR OFFERING ANY EVIDENCE OF THE OFFICER'S ANNUAL SALARY HISTORY.**

Information about the annual salary of Goulart is inadmissible under Rules 402, 403, 611, 802, and 901. Such information is not relevant, more prejudicial than probative, likely cause juror confusion, waste time, and will only be used to further harass and embarrass Goulart.

Here, it is undisputed that Goulart was the assigned officer to plaintiff's arrest and subsequent criminal prosecution. Because, in this action, plaintiff's claims of false arrest and malicious prosecution arise out of the Fourth Amendment, an officer's motives in making an arrest are completely irrelevant in the probable cause analysis. Whren v. United States, 517 U.S.

806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis"); <u>Mistretta v. Prokesch</u>, 5 F. Supp. 2d 128, 135 (E.D.N.Y. 1998) ("Even less savory ulterior motives are irrelevant as long as the facts available to the arresting officer satisfy the probable cause standard"); <u>Stokes v. City of New York,</u> No. 05 Civ. 0007 (JFB), 2007 U.S. Dist. LEXIS 32787, at *31 (E.D.N.Y. May 3, 2007) (holding that plaintiff's arguments regarding the officer's alleged lack of credibility and purported improper motives for the arrest are unavailing because they have no bearing on the probable cause analysis).

Moreover, introducing evidence of, or questioning Goulart on, his annual salary history will likely cause juror confusion. Thus, such information is more prejudicial than probative, and will also result in undue harassment and embarrassment to Goulart. Additionally, the information contained within the Annual Salary Report constitutes inadmissible hearsay since Goulart did not create those entries. Therefore, plaintiff should be precluded from questioning or offering any evidence of the annual salary history of Goulart under Rules 402, 403, 611, 802, and 901.

### POINT V

### PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING ANY EVIDENCE OF NON-PARTY OFFICERS' MEMOBOOK ENTRIES.

Memobook entries of non-party officers Perez, UC#0087, Navarro, Bello, and Peinan are inadmissible under Rules 402, 403, 611, and 802. In the first instance, these police officers had no personal involvement in plaintiff's arrest, detention, and subsequent criminal prosecution, and therefore their memobooks are irrelevant under Rule 402. Additionally, because the parties do not have any of these non-party officers listed in their Joint Pre-Trial Order ("JPTO"), and do not intend to call them at trial, their respective memobooks are irrelevant, and serve no real purpose other than to harass and embarrass defendants and Wynne. To allow plaintiff to introduce these memobooks, which contain irrelevant information, would only create confusion and waste time

under Rule 403. Moreover, the information that is likely to be found in the memobooks for these non-party officers is duplicative to that which is already accounted for in other documents listed in the JPTO. Furthermore, the information contained in the memobooks should be precluded as inadmissible hearsay, pursuant to Rule 802, with respect to all of the officers who did not create the specific entries.  Accordingly, plaintiff should be precluded, under Rules 402, 403, 611, and 802, from offering the memobooks of Perez, UC#0087, Navarro, Bello, and Peinan.

POINT VI

### PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING INTO EVIDENCE CRIMINAL COURT DOCUMENTS.

Plaintiff seeks to offer into evidence the Certificate of Disposition regarding the underlying criminal prosecutions against him, as well as the Criminal Court Action Sheet. These documents should be precluded under Rules 402, 403, 802, and 901.

As an initial matter, defendants do not dispute the disposition of the criminal charges against plaintiff. The Certificate of Disposition has no bearing on whether there was probable cause to arrest and prosecute plaintiff; it is irrelevant under Rule 402. Moreover, the Certificate of Disposition does not give the reasons as to why the prosecution was not pursued by the District Attorney's office, thus fails to provide a context for the information contained within it. This would confuse and mislead the jury because the jury could mistakenly draw the conclusion that because the criminal charges were ultimately dismissed, the arrest and subsequent criminal prosecution were unlawful. This potential for confusion and misleading of the jury would also create a danger of unfair prejudice to defendants. Accordingly, the Certificate of Disposition should also be precluded under Rule 403.

The introduction of the Criminal Court Action Sheet is equally irrelevant and likely to cause juror confusion; it should be precluded under Rules 402 and 403. Defendants do not dispute the essential facts contained in this document such as the date and time of plaintiff's arrest, the date of his arraignment, the date and amount of bail posted, and the disposition of the criminal charges. Also, the Criminal Court Action Sheet will not prove or disprove any of the facts of consequence to this action, and will only distract and confuse the jury from the main issues at trial. Moreover, the information contained in this document is cumulative and duplicative of information contained in other documents already identified in the JPTO and contained in the parties' sworn deposition testimony. Therefore, admission of such document would only waste the court's and the parties' time. Additionally, the statements contained in the Criminal Court Action Sheet are inadmissible hearsay under Rule 802.

## POINT VII

### PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING INTO EVIDENCE DISTRICT ATTORNEY'S DOCUMENTS.

Plaintiff seeks to offer into evidence the following District Attorney documents: the District Attorney Folder, Criminal Justice Agency ("CJA") Interview Report, Grand Jury Notice, Discovery Responses, and Asset Forfeiture Documents. All these documents should be precluded under Rule 402, 403, 802, and 901.

As an initial matter, the District Attorney Folder, CJA Interview Report, and Asset Forfeiture Documents contain inadmissible hearsay statements under Rule 802. Additionally, these documents are confusing and misleading to the jury, prejudicial to the defendants, and contain information that is cumulative and duplicative of information contained in other documents already identified in the parties' JPTO and contained in the partiers' sworn deposition testimony. The CJA Interview Report and Asset Forfeiture Documents are also irrelevant under

Rule 402 because these documents do not address whether there was probable cause to arrest and prosecute plaintiff. Therefore, such evidence will only waste time at trial; should be excluded under Rule 403. As for the Grand Jury Notice, it should also be excluded under Rules 402, 403, and 802 because it is irrelevant, confusing, misleading, prejudicial, and contains inadmissible hearsay. Since plaintiff's criminal case was never presented to the Grand Jury, the jury would likely be confused and misled by this document, and mistakenly draw the conclusion that the arrest and subsequent criminal prosecution of plaintiff were therefore unlawful. This would further create a danger of unfair prejudice to defendants.

The District Attorney's Discovery Responses also contain hearsay statements and are irrelevant, confusing, cumulative, and a waste of time. First, this document pertains only to Victor Virola who is not a party in this case. Second, the information contained in this document is cumulative of information contained in other documents already identified in the parties' JPTO and contained in the parties' sworn deposition testimony. Thus, admitting this document into evidence would only waste time. Accordingly, the District Attorney's Discovery Responses should be precluded under Rules 402, 403, 802, and 901.

### POINT VIII

### PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING NON-PARTY WITNESSES PETER ZADEK, ESQ. AND SUBWAY AND FIREHOUSE DELI EMPLOYEES.

Plaintiff, in his Joint Pretrial Order, has identified two sets of non-party witnesses he wishes to call at trial: Peter Zadek, Esq. and employees of Subway and Firehouse Deli. As an initial matter, these witnesses should be precluded at trial because they were not disclosed in plaintiff's Rule 26(a)(1) disclosures, in any supplemental disclosure pursuant to Rule 26(e), in response to defendants' interrogatory request pursuant to Rule 33 requesting identification of any

and all witnesses, or at any time during the course of fact discovery.  Thus, defendants were not on notice of these witnesses and would be unduly prejudiced by their testimony; these witnesses should be precluded pursuant to Rule 403 and Fed. R. Civ. Pro. 37(c)(1).

Federal Rule of Civil Procedure 37 was designed exactly for this type of situation. Announcing a witness at the last minute, i.e. in the JPTO, subjects the defendants to unfair surprise and prejudice.  It bears noting that, although plaintiff identifies these witnesses for the first time in the JPTO, he still fails to provide the identities or addresses for the employees of Subway and Firehouse Deli.  Given plaintiff's inexcusable delay in identifying these witnesses and all of their necessary contact information, they should be precluded.  Solange Ltd. v. Lane Bryant, Inc., No. 99 Civ. 7805, 2000 U.S. App. LEXIS 1857, at *2-3 (2d Cir. 2000).  Moreover, because defendants are unaware of the identities of these witnesses and unaware of what they will say on the stand at trial, defendants will be prejudiced by their testimony. Thus, under Rule 403, these witnesses should be precluded.  Additionally, non-party witness Peter Zadek's proffered testimony is inadmissible hearsay under Rule 802.

## POINT IX

### DEFENDANTS SHOULD BE PERMITTED TO INTRODUCE EVIDENCE OF, AND EXAMINE PLAINTIFF ON, HIS ARREST AND CONVICTION HISTORY.

Defendants should be permitted to introduce evidence of, and question plaintiff on, his prior and subsequent arrests and convictions under Rules 402, 404(b), and 609(a)(1) in order to refute and mitigate his claim for damages arising out of his December 23, 2009 arrest, as well as for impeachment purposes.

**A.      Damages**

In this action, plaintiff is claiming damages for approximately a 30-hour detention as a result of his December 23, 2009 arrest.  However, in addition to his December 23, 2009 arrest, plaintiff has also been arrested at least 21 additional times (17 arrests prior to this incident), and spent an average of approximately 20-24 hours in police custody on most of those occasions.

For example, plaintiff was arrested on June 18, 2007 in Poughkeepsie, New York and spent approximately 24 hours in police custody. (See Deposition of Plaintiff Jermaine Nibbs, dated March 22, 2011 ("Pl. Dep."), annexed as Ex. "A" at 210:1-8, 212:1-22). Plaintiff was also arrested six times in Albany County from 1998-2006, and spent an average of approximately 24 hours in police custody on at least five of those occasions. For example, as a result of his February 11, 1998 arrest in Albany County, plaintiff was in police custody for approximately 24 hours. (See Ex. A, Pl. Dep. 237:16-238:3, 240:1-8). As a result of his August 20, 1998 arrest in Albany County, plaintiff was in police custody for approximately 24 hours. (See Ex. A, Pl. Dep. 236:10-237:2). As a result of his November 14, 1998 arrest in Albany County, plaintiff was in police custody for approximately 24 hours. (See Ex. A, Pl. Dep. 234:13-235:1). As a result of his October 15, 2003 arrest in Albany County, plaintiff was in police custody for approximately 24 hours. (See Ex. A, Pl. Dep. 225:6-24, 226:8-15). And, as a result of his January 30, 2006 arrest in Albany County, plaintiff was in police custody for approximately 24 hours. (See Ex. A, Pl. Dep. 223:8-16).

Plaintiff was also arrested in Bronx County from 1999-2011 on at least 14 occasions (not including his December 23, 2009 arrest at issue), spending an average of 20 hours in police custody on most of those occasions. For example, as a result of his February 7, 2000 arrest in Bronx County, plaintiff was in police custody for approximately 20 hours. (See Plaintiff's OLPA Arrest History ("Pl. OLPA"), attached as Exhibit "B", Bates No. 512). As a result of his January

8, 2002 arrest in Bronx County, plaintiff was in police custody for approximately 20 hours. (See Ex. B, Pl. OLPA, Bates No. 513). As a result of his April 13, 2007 arrest in Bronx County, plaintiff was in police custody for approximately 19 hours. (See Ex. B, Pl. OLPA, Bates No. 516). As a result of his March 23, 2010 arrest in Bronx County, plaintiff was in police custody for approximately 32 hours. (See Ex. B, Pl. OLPA, Bates No. 519). As a result of his April 23, 2010 arrest in Bronx County, plaintiff was in police custody for approximately 20 hours. (See Ex. B, Pl. OLPA, Bates No. 521). As a result of his January 28, 2011 arrest in Bronx County, plaintiff was in police custody for approximately 25 hours. (See Ex. B, Pl. OLPA, Bates No. 523). And, as a result of his July 12, 2011 arrest in Bronx County, plaintiff was in police custody for approximately 20 hours. (See Ex. B, Pl. OLPA, Bates No. 528).

Should the jury determine that damages are warranted in plaintiff's case, the amount of time plaintiff spent in police custody on each of his prior and subsequent arrests bears directly on the issue of any damages stemming from his time in police custody as a result his December 23, 2009 arrest. As the Court is aware, nominal damages are not permitted in false arrest cases. Kerman v. City of New York, 374 F.3d 93, 124 (2d Cir. 2004). If it finds liability against defendants, the jury must award compensatory damages for plaintiff's loss of liberty by calculating plaintiff's actual time in custody. Kerman, 374 F.3d at 124-26. Accordingly, it is necessary for the jury to compare the approximately 30 hours plaintiff spent in police custody in this case to the time plaintiff spent in police custody for his prior and subsequent arrests to measure damages, if any, for plaintiff's claimed loss of liberty.

Courts in both the Southern and Eastern Districts of New York have also permitted inquiry into a plaintiff's arrest history for the purposes of emotional damages. A common rationale is that "one who has had a number of prior arrests and detentions is likely to have

suffered less distress than one who has never been detained." Wilson v. City of New York, No. 06 Civ. 229 (ARR), 2006 U.S. Dist. LEXIS 90050, at *1-2 (E.D.N.Y. Dec. 13, 2006); see also Schiller v. City of New York, No. 04 Civ. 7922 (KMK), 2006 U.S. Dist. LEXIS 88854, at *24-25 (S.D.N.Y. Dec. 7, 2006) (same); Ellis v. City of New York, 06 Civ. 4827 (LTS), Order Resolving Motions In Limine (S.D.N.Y. June 18, 2007) (same); Banushi v. P.O. Palmer, No. 08 Civ. 2937 (KM), 2011 U.S. Dist. LEXIS 419, at *7-9 (E.D.N.Y. Jan. 4, 2011) (finding plaintiff's prior arrest and incarceration history relevant to a jury's determination of emotional damages under Rule 402). Furthermore, the probative value of arrest history evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Banushi, 2011 U.S. Dist. LEXIS 419, at *7-9 (quotations omitted); Picciano v. McLoughlin, No. 07 Civ. 0781 (GTS), 2010 U.S. Dist. LEXIS 114704, at *7 (N.D.N.Y. Oct. 28, 2010).

        In the present case, plaintiff is pursuing claims for emotional damages stemming from his December 23, 2009 arrest.  More specifically, in addition to compensatory damages for the time plaintiff spent in police custody, plaintiff alleges to have suffered "mental anguish," "shock," "fright," "fear for his safety", "apprehension," "embarrassment," and "humiliation," and claims to have been subjected to "handcuffing and other physical restraints" as a result of that arrest. (See Docket Entry No. 12, Plaintiff's Amended Complaint at ¶¶ 21, 30, 43, and 49). Considering plaintiff is seeking such damages stemming from his December 23, 2009 arrest, plaintiff's arrest and conviction history are relevant under Rule 402 to refute and mitigate his claimed damages, and provide alternate theories of causation to the jury. In other words, the fact that on prior and subsequent occasions plaintiff has been handcuffed by the police and detained at police precincts and at Central Booking for several hours goes to his claim of emotional damages in this case.

Additionally, to the extent that plaintiff claims ongoing fear for his safety of police officers, defendants should be entitled to introduce evidence of a shooting incident involving plaintiff which may provide an alternate theory of causation to his alleged continuing emotional distress damages. Plaintiff claims that he was a victim of a shooting in September 2010. (See Ex. A, Pl. Dep. 153:6-25, 157:1-4). As a result of the shooting incident, plaintiff testified that he "[feels] scared," "frightened," "ha[s] nightmares," "[has] problems sleeping," "jump[s]" hearing loud noises, "scream[s]" in his sleep, and even "had a seizure in [his] sleep." (See Ex. A, Pl. Dep. 196:7-22). As a result, plaintiff began taking medication. (See Ex. A, Pl. Dep. 145:14-19, 153:6-25, 157:1-4, 196:3-6). Therefore, plaintiff's so-called continuing "fear for his safety" and "fright" of police officers is likely to have been caused from factors other than the individual defendants' alleged conduct on December 23, 2009.

Accordingly, plaintiff's December 23, 2009 arrest and alleged damages must be placed in context for the jury through his other arrests, convictions, and other experiences with law enforcement, and therefore are relevant in the instant litigation under Rule 402.

**B.    Impeachment**

Plaintiff's arrest history aside, his conviction history is admissible under Federal Rule of Evidence 609(a)(1) to impeach plaintiff for his truthfulness.  District courts in this Circuit have found the impeachment-veracity value of an unlawful sale of controlled substances to be high, even though it is not generally considered a crime involving dishonesty under Rule 609(a)(2). See Picciano, 2010 U.S. Dist. LEXIS 114704, at *9-13 (permitting defendants to question plaintiff at trial regarding the nature of his 2009 drug conviction); see also Brundidge v. City of Buffalo, 79 F. Supp. 2d 219, 226 (W.D.N.Y. 1999) (permitting defendants to cross-examine plaintiff and her witnesses at trial as to their past drug-related convictions); Daniels v. Loizzo, 986 F. Supp. 245, 250-51 (S.D.N.Y. 1997) (permitting defendants to examine plaintiff at trial on

18

his prior drug conviction because it is more probative of plaintiff's truthfulness than unduly prejudicial); Lewis v. Velez, No. 89 Civ. 5085 (MLJ), 1993 U.S. Dist. LEXIS 6586, at *16-17 (S.D.N.Y. May 19, 1993) (permitting defendants to question plaintiff regarding his prior drug conviction reasoning that "given the jury's awareness that the plaintiff is a convicted felon, there is no prejudice that could substantially outweigh that probative value"); United States v. Hayes, 553 F.2d 824, 828 (2d Cir. 1977) (finding conviction for drug smuggling admissible under Rule 609(a)(1) because the crime was probative of accused's veracity); United States v. Ortiz, 553 F.2d 782, 784 (2d Cir. 1977) (finding heroin sales conviction probative of accused's veracity); United States v. Feola, 651 F. Supp. 1068, 1126-27 (S.D.N.Y. 1987) (finding narcotics conspiracy conviction probative of accused's veracity).

Courts have also found that other types of felony convictions bears on the credibility of a plaintiff and his or her witnesses because the felony convictions remove any misperceptions that they are model citizens. See Young v. Calhoun, No. 85 Civ. 7584 (SWK), 1995 U.S. Dist. LEXIS 4555, at *8-12 (S.D.N.Y. Apr. 7, 1995) (permitting defendants to question plaintiff at trial regarding his murder conviction as probative of plaintiff's credibility). Courts have even allowed witnesses to be cross-examined on past crimes where the conviction at issue bears no resemblance to the current action. Daniels, 986 F. Supp. at 250; Lewis, 1993 U.S. Dist. LEXIS 6586, at *15-16.

Here, plaintiff and the individual defendants have radically divergent versions of the events that occurred on December 23, 2009 resulting in plaintiff's arrest. Given these conflicting stories, the jury will be tasked with determining who is telling the truth; plaintiff's credibility on the stand at trial is of decisive importance. Accordingly, defendants should be permitted to

question and introduce evidence of plaintiff's prior and subsequent convictions to impeach plaintiff's veracity under 609(a)(1).

## C.   Rebuttal

Defendants do not seek to use plaintiff's prior arrests and conviction as evidence that plaintiff acted in conformity with his prior bad acts under Rule 404(b). Here, plaintiff here seeks to introduce "motive" and "knowledge" on the part of the individual defendants as the basis for his arrest at issue, claiming that individual defendants were aware of his lengthy prior criminal history, and therefore arrested him for no reason on December 23, 2009. See, e.g., Sims v. Blot, 354 Fed. Appx. 504, 506-07 (2d Cir. 2009) (affirming district court's admission of evidence of plaintiff's prior misconduct evidence reasoning that it was admissible under Rule 404(b), under the "motive" exception).  In order to rebut this claim at trial, defendants will have to introduce evidence of plaintiff's arrest history (if plaintiff does not) to show that each of plaintiff's prior and subsequent arrests involved completely different police officers, who had no prior knowledge of the identity or criminal background of plaintiff.  Thus, plaintiff's prior and subsequent arrest and conviction history, as well as other experiences with law enforcement, are admissible under Rule 404(b) to rebut plaintiff's claim that the individual defendants had an impermissible motive to arrest plaintiff on December 23, 2009.

In sum, under Rules 402, 404(b), and 609(a)(1), defendants should be permitted to question and introduce evidence of plaintiff's arrest and conviction history (1) to refute and mitigate plaintiff's claimed damages, (2) to impeach plaintiff at trial by calling his veracity into question, and (3) to rebut plaintiff's claim that defendants were aware of plaintiff's identity and criminal background prior to his December 23, 2009 arrest.

## POINT X

### DEFENDANTS SHOULD BE PERMITTED TO INTRODUCE EVIDENCE OF, AND EXAMINE PLAINTIFF ON, HIS USE OF ALIASES AND FALSE DATES OF BIRTH.

Defendants should be permitted to introduce evidence of, and question plaintiff on, his use of aliases and false dates of birth under Rules 402 and 608(b). Plaintiff's use of false identities and dates of birth is relevant to his character for truthfulness, and should be available to the jury to consider for this purpose.

Several courts in this Circuit and in this District have deemed the use of aliases and differing dates of birth to be admissible precisely for the purpose of addressing a plaintiff's credibility. See Jean-Laurent v. Wilkinson, No. 05 Civ 0583 (VM), 2009 U.S. Dist. LEXIS 20472, at *8-9 (S.D.N.Y. Mar. 13, 2009) (permitting defendants to introduce evidence of plaintiff's two aliases at trial); see also Sedney v. Blot, No. 00 Civ. 1302 (LTS), 2003 U.S. Dist. LEXIS 21364, at *10 (S.D.N.Y. Dec. 1, 2003) (permitting defendants to examine plaintiff on his differing social security and birthplace information as probative of his character for truthfulness); Fletcher v. City of New York, 54 F. Supp. 2d 328, 333 (S.D.N.Y. 1999) (permitting defendants to introduce evidence of plaintiff's use of 18 aliases under Fed. R. Evid. 608(b)); Young, 1995 U.S. Dist. LEXIS 4555, at *14-16 (permitting defendants to question plaintiff's use of false names and identities as probative of his truthfulness); Brundidge, 79 F. Supp. 2d at 227 (permitting defendants to examine plaintiff on his use of aliases and false social security numbers on grounds of truthfulness). In other words, "[i]f a man lie about his own name, might he not tell other lies?" Lyda v. United States, 321 F.2d 788, 793 (9th Cir. 1963).

Here, plaintiff has used aliases, false identities, and false dates of birth. During the course of plaintiff's March 22, 2011 deposition, plaintiff testified that he is known "in the street" as JJ.

(<u>See</u> Ex. A, Pl. Dep. 227:2-9).  Plaintiff also testified that he used another aliases known as "Jermaine Robinson" on at least 5 occasions in connection with his prior arrests. (<u>See</u> Ex. A, Pl. Dep. 227:11-19, 267:18-268:9, 269:19-270:6, 274:11-25, 279:19-280:5). Plaintiff also admitted at his deposition that he provided a police officer with the false name "Anthony Jones" in connection with his March 30, 2000 arrest, and claimed that he pled guilty to that incident. (<u>See</u> Ex. A, Pl. Dep. 231:4-23). Additionally, plaintiff testified to having used the name "Tyrone Nibbs" as another alias. (<u>See</u> Ex. A, Pl. Dep. 256:2-17). Plaintiff has also used the following false dates of birth: February 5, 1979; March 5, 1979; and July 4, 1975. (<u>See</u> Plaintiff's "Rap Sheet" from the New York State Division of Criminal Justice Services, attached as Exhibit "C"). Therefore, defendants submit that they should be able to inquire into plaintiff's use of aliases and other false identities, including his false dates of birth, on cross-examination, as it is directly relevant to the question of plaintiff's character for truthfulness under Rules 402 and 608(b), and should be available to the jury for this purpose.

## POINT XI

### DEFENDANTS SHOULD BE PERMITTED TO REFER TO AND INTRODUCE EVIDENCE OF PLAINTIFF'S MARIJUANA USE.

Defendants should be permitted to proffer evidence of plaintiff's past and present use of marijuana at trial pursuant to Fed R. Evid. 402, 404(b), and 609.  Plaintiff's use of marijuana is relevant to refute his damages claim, and is crucial for assessing plaintiff's credibility and for impeachment.

The Second Circuit and courts in the Southern District have often allowed inquiry into a plaintiff's prior drug use insofar as it has relevance to plaintiff's claimed damages. <u>Burke v. Spartanics</u>, 252 F.3d 131, 136 (2d Cir. 2001) (affirming trial court's admission of plaintiff's prior drug use as relevant to the issue of damages); <u>Jean-Laurent</u>, 2009 U.S. Dist. LEXIS 20472,

at *9 (S.D.N.Y. Mar. 13, 2009) (permitting defendants to introduce evidence of plaintiff's history of drug use at trial because it is relevant to the damages or injuries claimed); Fletcher, 54 F. Supp. 2d at 333-34 (S.D.N.Y. 1999) (permitting defendants to question plaintiff regarding his past drug use, under Rule 404(b)'s "other purposes" exception, with respect to what damages, if any, were allegedly caused by defendants). Moreover, evidence of a plaintiff's drug use is crucial for impeachment purposes on grounds of impaired perception and inability to recall the events on the day of the incident. See Hernandez v. Kelly, No. 09 Civ. 1576 (TLM), 2011 U.S. Dist. LEXIS 57114, at *10-12 (E.D.N.Y.  May 27, 2011) (permitting defendants to examine plaintiff about what drugs plaintiff was taking at the time of the incident).

In this case, plaintiff testified that he is a chronic marijuana user. (See Ex. A, Pl. Dep. 60:1-4). More importantly, plaintiff testified at his deposition that he smoked marijuana before his arrest. (See Ex. A, Pl. Dep. 42:11-20). Specifically, plaintiff admitted to smoking "two, three blunts" at his niece's apartment on the date of the incident -- just a couple of hours before his arrest. (See Ex. A, Pl. Dep. 57:5-25, 58:9-13). Therefore, plaintiff's ability to accurately recall the events surrounding his December 23, 2009 arrest and report his perceptions are clearly at issue and are a proper subject of cross-examination.

Additionally, plaintiff testified that, in or around 2007, his parole officer had ordered him to complete a mandated one-year drug rehabilitation program. (See Ex. A, Pl. Dep. 187:13-188:9).  And since completing the program in or around 2008, plaintiff claimed that he had "been good" up until the December 23, 2009 arrest at issue, which caused him to feel "embarrassed" and "upset." (See Ex. A, Pl. Dep. 191:4-20). However, since allegedly completing the drug treatment program sometime in 2008, plaintiff has been arrested and convicted of marijuana possession charges on at least two occasions -- April 23, 2011 and July 12, 2011 (See Ex. A, Pl.

Dep. 193:14-16; Ex. B, Pl. OLPA, Bates Nos. NYC521, NYC528). All of this information is relevant to refute and mitigate plaintiff's damages, as well as allow the jury to make its own determination as to plaintiff's credibility at trial.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court grant their motions *in limine*, together with such other and further relief as this Court may deem just and proper.

Dated:      New York, New York
            August 19, 2011

> MICHAEL A. CARDOZO
> Corporation Counsel of the
>   City of New York
>   *Attorney for Defendants George Goulart and*
>   *Undercover Officer # 0077*
> 100 Church Street
> New York, New York 10007
> Tel.: (212) 788-0467/(212) 341-0797

By:      _____
         RAJU SUNDARAN, Senior Counsel
         BRIAN FARRAR, Assistant Corporation
         Counsel

To:      COHEN & FITCH LLP (via ECF and First Class Mail)
         *Attorney for Plaintiff*
         225 Broadway, Suite 2700
         New York, New York 10007
         Tel:  (212) 374-9115
         Fax: (212) 406-6890