**10 CIV 3799 (VM)**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JERMAINE NIBBS,

Plaintiff,

-against-

DET. GEORGE GOULART, Shield No. 5792, Individually and in his Official Capacity and
UNDERCOVER OFFICER # 0077, Individually and in his Official Capacity,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW

## IN OPPOSITION TO PLAINTIFF'S MOTIONS *IN LIMINE*

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Raju Sundaran*
*Tel: (212) 788-0467*
*Matter No.: 2010-020583*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ............................................................................... 1

POINT I

           PLAINTIFF'S ARREST AND CONVICTION HISTORY ARE RELEVANT AND NOT UNDULY PREJUDICIAL. ....................................... 1

           A.  Relevance of Plaintiff's Prior and Subsequent Arrests ................................................................. 2

           B.  Impeachment Value of Plaintiff's Two Felony Convictions .............................................................. 5

           C.  Impeachment Value of Plaintiff's Two Violation Convictions .......................................................... 7

POINT II

           PLAINTIFF'S MARIJUANA USE IS RELEVANT, PROBATIVE, AND NOT UNDULY PREJUDICIAL. ................................. 9

POINT III

           PLAINTIFF'S FAILURE TO PAY CHILD SUPPORT IS RELEVANT, PROBATIVE AND NOT UNDULY PREJUDICIAL . .......................................... 11

POINT IV

           ADA FARRINGTON'S TESTIMONY IS RELEVANT AND WOULD NOT RESULT IN REVERSIBLE ERROR. ........................................... 13

POINT V

           NON-PARTY WITNESS LETICIA TAVERAS SHOULD BE PERMITTED TO TESTIFY. ........................................... 15

CONCLUSION ......................................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**                                                                    **Pages**

Banushi v. P.O. Palmer,
2011 U.S. Dist. LEXIS 419 (E.D.N.Y. Jan. 4, 2011) .............. 4

Boyd v. City of New York,
336 F.3d 72 (2d Cir. 2003).............. 17

Brawer v. Carter,
1995 U.S. Dist. LEXIS 11049 (S.D.N.Y. Aug. 7, 1995) .............. 3

Breytman v. Olinville Realty, LLC,
46 A.D.3d 484 (1st Dep't 2007) .............. 15

Brundidge v. City of Buffalo,
79 F. Supp. 2d 219 (W.D.N.Y. 1999) .............. 6

Burke v. Spartantics,
252 F.3d 131 (2d Cir. 2001).............. 9

Cameron v. City of New York,
598 F.3d 50 (2d Cir. 2010).............. 13, 14

Daniels v. Loizzo,
986 F. Supp. 245 (S.D.N.Y. 1997) .............. 6, 7

Dobson v. Walker,
2005 U.S. App. LEXIS 21294 (2d Cir. Sep. 30, 2005) .............. 10

Ellis v. City of New York,
06 Civ. 4827 (LTS), (S.D.N.Y. June 18, 2007) .............. 4

Fletcher v. City of New York,
54 F. Supp. 2d 328 (S.D.N.Y. 1999).............. 9

Henry v. Speckard,
22 F.3d 1209 (2d Cir.),
cert. denied, 513 U.S. 1029 (1994) .............. 12, 16

Jean-Laurent v. Wilkinson,
2009 U.S. Dist. LEXIS 20472 (S.D.N.Y. Mar. 13, 2009) .............. 9

Kerman v. City of New York,
374 F.3d 93 (2d Cir. 2004).............. 2

**Cases**                                                                          **Pages**

Lewis v. Velez,
    1993 U.S. Dist. LEXIS 6586 (S.D.N.Y. May 19, 1993).......................................... 6, 7

McNamara v. City of New York,
    2009 U.S. Dist. LEXIS 22639 (S.D.N.Y. Mar. 20, 2009) ...................................... 15

Murphy v. Lynn,
    118 F.3d 938 (2d Cir. 1997)............................................................................. 14, 15

Pagnucco v. Pan American World Airways, Inc.,
    37 F.3d 804 (2d Cir. 1994)...................................................................................... 3

Picciano v. McLoughlin,
    2010 U.S. Dist. LEXIS 114704 (N.D.N.Y. Oct. 28, 2010) .............................. 4, 6, 7

Schiller v. City of New York,
    2006 U.S. Dist. LEXIS 88854 (S.D.N.Y. Dec. 7, 2006) ........................................ 4

Slatkin v. Lancer Litho Packaging Corp.,
    33 A.D.3d 421 (1st Dep't 2006) ......................................................................... 15

United States v. Abel,
    469 U.S. 45 (1984).......................................................................................... 12, 16

United States v. Blackwood,
    456 F.2d 526 (2d Cir. 1971),
    cert. denied, 409 U.S. 863 (1972) ............................................................. 12, 16, 17

United States v. Di Paolo,
    804 F.2d 225 (2d Cir. 1986)................................................................................ 10

United States v. Feola,
    651 F. Supp. 1068 (S.D.N.Y. 1987)..................................................................... 7

United States v. Figueroa,
    548 F.3d 222 (2d Cir. 2008)........................................................................... 12, 16

United States v. Haggett,
    438 F.2d 396 (2d Cir. 1971)........................................................................... 12, 16

United States v. Harvey,
    547 F.2d 720 (2d Cir. 1976)........................................................................... 12, 16

United States v. Hayes,
    553 F.2d 824 (2d Cir. 1977)................................................................................ 7

<u>**Cases**</u>                                                                 <u>**Pages**</u>

<u>United States v. James,</u>
    609 F.2d 36 (2d Cir. 1979)............................................................................ 12, 16

<u>United States v. Ortiz,</u>
    553 F.2d 782 (2d Cir. 1977)............................................................................... 7

<u>United States v. Sampol,</u>
    636 F.2d 621 (D.C. Cir. 1980) ....................................................................... 10

<u>Wilson v. City of New York,</u>
    2006 U.S. Dist. LEXIS 90050 (E.D.N.Y. Dec. 13, 2006) ........................................ 4

<u>Wilson v. United States,</u>
    232 U.S. 563 (1914).......................................................................................... 10

<u>**Statutes**</u>

Fed. R. Evid. 402 ................................................................................... *passim*

Fed. R. Evid. 403 ..................................................................................... 2, 5, 9

Fed. R. Evid. 404 ................................................................................ 2, 3, 7, 9

Fed. R. Evid. 407 ........................................................................................ 16

Fed. R. Evid. 608 ............................................................................... 2, 7, 8, 11

Fed. R. Evid. 609 .................................................................................. *passim*

<u>**Other Authorities**</u>

McCormick, <u>Evidence</u>, § 41 (2d Ed. 1972) ........................................................... 17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

JERMAINE NIBBS,

                               Plaintiff,

                -against-

DET. GEORGE GOULART, Shield No. 5792,
Individually and in his Official Capacity and
UNDERCOVER OFFICER # 0077, Individually and in his
Official Capacity,

                              Defendants.

------------------------------------------------------------------------ x

**DEFENDANTS'
MEMORANDUM OF LAW
IN OPPOSITION TO
PLAINTIFF'S MOTIONS *IN
LIMINE***

10 CIV 3799 (VM)

## PRELIMINARY STATEMENT

On August 22, 2011, plaintiff Jermaine Nibbs ("plaintiff") filed his memorandum of law

moving *in limine* ("Pl. Memo") for exclusion of various evidence defendants Detective George

Goulart ("Goulart") and Undercover Officer # 0077 ("UC#0077") (collectively, "defendants")

seek to introduce, or examine plaintiff on, during trial. Defendants submit this memorandum of

law in opposition to plaintiff's motions *in limine.* For the reasons set forth more fully below and

for the reasons stated in defendants' memorandum law in support of their motions *in limine*,

dated August 19, 2011 ("Defs. Memo"), plaintiff's motions *in limine* should be denied in its

entirety.

### POINT I

### PLAINTIFF'S ARREST AND CONVICTION HISTORY ARE RELEVANT AND NOT UNDULY PREJUDICIAL.

Plaintiff seeks to preclude defendants from introducing any evidence relating to

plaintiff's prior and subsequent arrests and convictions alleging, among other things, lack of

relevance, prejudice, propensity evidence, and lack of impeachment purpose, pursuant to Federal

Rules of Evidence ("Fed. R. Evid." or "Rule") 402, 403, 404(b), 608, and 609. However, plaintiff's arguments fail for several reasons. As an initial matter, defendants do not seek to introduce evidence of prior and subsequent arrests and convictions to prove that he acted in conformity with his conduct at issue on December 23, 2009, which would be specifically prohibited under Rule 404(b). Instead, as set forth below and in Point IX of Defs. Memo, defendants seek to introduce evidence of, and question plaintiff on, his prior and subsequent arrests and convictions, under Rules 402, 404(b), and 609(a)(1) in order have the jury assess his claim for damages arising out of his December 23, 2009 arrest, to impeach plaintiff for his veracity, and refute his claim of being targeted on December 23, 2009 by the police.

**A.    Relevance of Plaintiff's Prior and Subsequent Arrests**

Plaintiff argues that his prior and subsequent arrests that were dismissed (i.e., that did not result in convictions) are inadmissible as irrelevant, prejudicial, and propensity evidence, and cannot be used to impeach him all under Rules 402, 403, 404(b), and 608. (See Pl. Memo at 11-14). Here, it is undisputed that plaintiff is claiming damages for an alleged "loss of his liberty" for the approximate 30-hour detention stemming from his December 23, 2009 arrest, and "loss of liberty and *dignity*" for the period of his subsequent criminal prosecution. (See Pl. Memo at 1-2, 12-13) (emphasis added). However, as the Court is aware, nominal damages are not permitted in false arrest cases. <u>Kerman v. City of New York</u>, 374 F.3d 93, 124 (2d Cir. 2004). If it finds liability against defendants, the jury must award compensatory damages for plaintiff's loss of liberty -- regardless of whether there is a claim for emotional distress damages -- by calculating plaintiff's actual time in custody. <u>Kerman</u>, 374 F.3d at 124-26. As such, a jury may be inclined to award a greater amount of damages if they believe plaintiff has never experienced a prior detention or arrest as compared to his actual, extensive arrest and conviction history.

Here, plaintiff was arrested on June 18, 2007 in Poughkeepsie, New York and spent approximately 24 hours in police custody. (See Defs. Memo, Ex. A, Pl. Dep. 210:1-8, 212:1-22). Plaintiff was also arrested six times in Albany County from 1998-2006, and spent an average of approximately 24 hours in police custody on at least five of those occasions. (See Defs. Memo, Ex. A, Pl. Dep. 223:8-16, 225:6-24, 226:8-15, 234:13-235:1, 236:10-237:2, 237:16-238:3, 240:1-8). Finally, plaintiff was arrested in Bronx County on at least 14 additional occasions, not including his December 23, 2009 arrest at issue, and spent an average of 20 hours in police custody on most of those occasions. (See Defs. Memo, Ex. B, OLPA Arrest History, Bates Nos. 512, 513, 516, 519, 521, 523, and 528). Accordingly, it is necessary for the jury to compare the approximately 30 hours plaintiff spent in police custody in this case to each time plaintiff spent in police custody for his prior and subsequent arrests to measure damages, if any, for his claimed loss of liberty. See Pagnucco v. Pan American World Airways, Inc., 37 F.3d 804, 823 (2d Cir. 1994) (following "the inclusionary approach to prior misconduct evidence that allows the admission of prior misconduct for any other relevant purpose").

Moreover, plaintiff's claimed damages to "dignity" or character and reputation (See Pl. Memo at 12-13) is relevant for purposes of measuring damages with respect to his malicious prosecution and denial of right to a fair trial claim.[1] See Brawer v. Carter, No. 94 Civ. 4632 (DC), 1995 U.S. Dist. LEXIS 11049, at *4 (S.D.N.Y. Aug. 7, 1995) (plaintiff's past criminal history relevant to measure damages for malicious prosecution action, which includes injuries to

---

[1] Plaintiff claims that he is no longer asserting a claim for emotional injury and withdraws any such claim previously asserted, but still asserts a "dignity" claim which has an intrinsic emotional component. (Pl. Memo at 2, n.2, 12-13). Thus, plaintiff is not deemed to have withdrawn his emotional claim. Finally, defendants also submit that by plaintiff putting his "dignity" or reputation and character at issue (See Pl. Memo at 12-13), he has opened the proverbial door under Rule 404.

plaintiff's reputation and character). Additionally, plaintiff testified, on more than one occasion, at his deposition that he suffered humiliation and embarrassment as a result of his arrest at issue. (See Deposition of Plaintiff Jermaine Nibbs, dated March 22, 2011 ("Pl. Dep."), annexed as Ex. "D" at 184:13 -15, 16-18, 191:4-12). Accordingly, courts in both the Southern and Eastern Districts of New York have permitted inquiry into a plaintiff's arrest history reasoning that "one who has had a number of prior arrests and detentions is likely to have suffered less distress than one who has never been detained." Wilson v. City of New York, No. 06 Civ. 229 (ARR), 2006 U.S. Dist. LEXIS 90050, at *1-2 (E.D.N.Y. Dec. 13, 2006); See Schiller v. City of New York, No. 04 Civ. 7922 (KMK), 2006 U.S. Dist. LEXIS 88854, at *24-25 (S.D.N.Y. Dec. 7, 2006) (same); see also Ellis v. City of New York, 06 Civ. 4827 (LTS), Order Resolving Motions *In Limine* (S.D.N.Y. June 18, 2007) (same); Banushi v. P.O. Palmer, No. 08 Civ. 2937 (KM), 2011 U.S. Dist. LEXIS 419, at *7-9 (E.D.N.Y. Jan. 4, 2011) (finding plaintiff's prior arrest and incarceration history relevant to a jury's determination of emotional damages under Rule 402). Moreover, because plaintiff also testified at his deposition about his ongoing fear for his safety of police officers as a result of his arrest at issue (See Ex. D, Pl. Dep. 184:19-23), defendants should be entitled to examine him at trial on his prior and subsequent arrests insofar as they relate to his ongoing fear of arrest by police officers.

Furthermore, contrary to plaintiff's conclusory and unsupported assertion of prejudice (See Pl. Memo at 14), the probative value of plaintiff's arrest and conviction history, if admitted into evidence, is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Banushi, 2011 U.S. Dist. LEXIS 419, at *7-9 (quotations omitted); Picciano v. McLoughlin, No. 07 Civ. 0781 (GTS), 2010 U.S. Dist. LEXIS 114704, at *7

(N.D.N.Y. Oct. 28, 2010). Accordingly, the reasons above and the reasons set forth in Defs. Memo, plaintiff's arrest history should be admitted under Rule 402.

In the alternative, for the purposes of introducing those of plaintiff's prior and subsequent arrests that did not result in a conviction or guilty plea to a lesser offense, defendants will agree, as plaintiff suggests, to a proper limitation by the Court to the following information for each such arrest: (1) the date of arrest, (2) level of offense at the time of arrest (violation, misdemeanor, or felony) not the specific offense, and (3) time in police custody for each arrest. (See Pl. Memo at 14).

**B.      Impeachment Value of Plaintiff's Two Felony Convictions**

Plaintiff argues that plaintiff's two prior felony convictions for narcotics sales should be inadmissible under Rules 404(b) and 609. (See Pl. Memo at 4-8). However, contrary to plaintiff's argument, defendants do not intend to use plaintiff's two prior felony convictions as propensity evidence specifically prohibited under Rule 404(b). Instead, plaintiff's two felony convictions are admissible under Rule 609(a)(1) to impeach plaintiff's character for truthfulness. Here, plaintiff was convicted of attempted criminal sale of a controlled substance in the third degree, a Class C felony, by a plea of guilty on February 25, 1999. (See Pl. Memo at 2). Plaintiff was, again, convicted by a plea of guilty to criminal sale of controlled substance in the third degree, a Class B felony, on August 25, 2004. (See Id.). Since both these convictions are under the ten-year rule set forth in Rule 609(b), they are admissible subject to Rule 403. Fed. R. Evid. 609(a)(1).

Plaintiff claims remoteness of these two felony convictions by asserting that is has been "seven (7) years since [his] most recent conviction and nine (9) years since his first." (See Pl. Memo at 7-8). However, it is clear that plaintiff is conflating the date or conviction with the date of his release from custody. Under Rule 609(b), "[e]vidence of a conviction under this rule is not

admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from confinement imposed for that conviction, *whichever is the later date*." Fed. R. Evid. 609(b) (emphasis added). Therefore, the governing dates for plaintiff's remoteness argument is the release date of January 9, 2006 for his August 25, 2004 felony conviction (3 years before his arrest at issue), and the release date of January 19, 2000 for plaintiff's February 25, 1999 felony conviction (9 years before his arrest at issue). (See Defs. Memo, Ex. C, Rap Sheet, Bates Nos. NYC337 and NYC342). Accordingly, both these felony convictions fall within the time limit prescribed under Rule 609(b).

Plaintiff next claims that his "two convictions for narcotics sales have no bearing on his veracity as a matter of law." (See Pl. Memo at 7). Not only is this blanket statement unsupported by citations to any controlling authority, but the district courts in this Circuit, as well as the Second Circuit, found the impeachment-veracity value of an unlawful sale of controlled substances to be high, even though it is not generally considered a crime involving dishonesty under Rule 609(a)(2). See Picciano, 2010 U.S. Dist. LEXIS 114704, at *9-13 (permitting defendants to question plaintiff at trial regarding the nature of his 2009 drug conviction); see also Brundidge v. City of Buffalo, 79 F. Supp. 2d 219, 226 (W.D.N.Y. 1999) (permitting defendants to cross-examine plaintiff and her witnesses at trial as to their past drug-related convictions); Daniels v. Loizzo, 986 F. Supp. 245, 250-51 (S.D.N.Y. 1997) (permitting defendants to examine plaintiff at trial on his prior drug conviction because it is more probative of plaintiff's truthfulness than unduly prejudicial); Lewis v. Velez, No. 89 Civ. 5085 (MLJ), 1993 U.S. Dist. LEXIS 6586, at *16-17 (S.D.N.Y. May 19, 1993) (permitting defendants to question plaintiff regarding his prior drug conviction reasoning that "given the jury's awareness that the plaintiff is a convicted felon, there is no prejudice that could substantially outweigh that probative value");

United States v. Hayes, 553 F.2d 824, 828 (2d Cir. 1977) (finding conviction for drug smuggling admissible under Rule 609(a)(1) because the crime was probative of accused's veracity); United States v. Ortiz, 553 F.2d 782, 784 (2d Cir. 1977) (finding heroin sales conviction probative of accused's veracity); United States v. Feola, 651 F. Supp. 1068, 1126-27 (S.D.N.Y. 1987) (finding narcotics conspiracy conviction probative of accused's veracity).

Furthermore, the probative value of plaintiff's two felony convictions is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Picciano, 2010 U.S. Dist. LEXIS 114704, at *7; Daniels, 986 F. Supp. at 250-51; Lewis, 1993 U.S. Dist. LEXIS 6586, at *16-17. Therefore, given the daunting task of the jury in determining whether the plaintiff or defendants are telling the truth surrounding the events of plaintiff's arrest, defendants should be permitted to question and introduce evidence of plaintiff's two felony convictions to impeach plaintiff's veracity under 609(a)(1).

**C.     Impeachment Value of Plaintiff's Two Violation Convictions**

Plaintiff argues that his convictions for two violations are inadmissible character evidence under Rule 404(b) and cannot be used for impeachment under Rule 609. As an initial matter, defendants do not seek to use these convictions to show to the jury plaintiff's character or that he acted "in conformity" with his conduct at issue. Fed. R. Evid. 404(b). However, defendants do intend to introduce evidence of these violation convictions, as they are not only relevant under 402, but also probative of plaintiff's character for truthfulness under Rules 608 and 609(a)(2). Defendants concede that Rule 609(a)(1) does not apply to these convictions.

Plaintiff was convicted of driving while impaired ("DWI"), a Violation, by a plea of guilty, on April 11, 2004. (See Defs. Memo, Ex. C, Rap Sheet, Bates Nos. NYC335). Plaintiff argues that violations are not "crime[s]" under the New York Penal Law and "irrelevant to credibility" under New York's Vehicle and Traffic Law. (See Pl. Memo at 10). Notwithstanding

plaintiff's self-serving assertions, plaintiff testified at his deposition that he was "couldn't [] walk straight that day," was "twisted," and "drunk" on that the date of his arrest for DWI. (See Ex. D, Pl. Dep. 258:21-25, 260:19-22). However, in the police arrest paperwork concerning his DWI arrest, plaintiff told the officer that he had "one" drink. (See Complaint, dated April 10, 2004, attached as Ex. "E"). Thus, plaintiff's character for truthfulness is directly implicated by the false statement he made to the police in connection with his DWI arrest. Additionally, plaintiff made another false statement to a police officer regarding plaintiff's residence address that resulted in a trespass arrest on January 14, 1999 (and conviction of disorderly conduct, a Violation, by plea of guilty). (See Ex. D, Pl. Dep. 281:1-11, 22-24 and Complaint, dated January 15, 1999, attached as Ex. "F").  Again, evidence of plaintiff's character for truthfulness is directly implicated by his trespass arrest. The fact that these were violations and not "crimes" is irrelevant because under Rule 608(b) "[s]pecific instances of a conduct of a witness for the purpose of attacking the witness's character for truthfulness . . . . may . . . if probative of truthfulness or untruthfulness be inquired into on cross-examination of the witness." Thus, plaintiff's false statements to police officers on these two occasions are relevant and essential under Rule 402 as they bear on his credibility – an essential factor in defendants' defense in this case. Moreover, these two convictions demonstrate plaintiff's character for lack of truthfulness and therefore should also be admissible under Rule 608(b) for impeachment.

## POINT II

### PLAINTIFF'S MARIJUANA USE IS RELEVANT, PROBATIVE, AND NOT UNDULY PREJUDICIAL.

Plaintiff moves *in limine* seeking to preclude defendants from offering evidence of, or referring to, plaintiff's marijuana use, under Rules 402, 403, and 404(b), arguing that it is irrelevant, unduly prejudicial, and impermissible character evidence. (See Pl. Memo at 15-16). As an initial matter, defendants do not seek to introduce plaintiff's marijuana use to show his bad character or that he acted in conformity with his prior bad acts. To the contrary, defendants seek to proffer evidence of plaintiff's past and present use of marijuana at trial as it is relevant to refute his damages claim, and is crucial for impeachment purposes.

The Second Circuit and courts in the Southern District have often allowed inquiry into a plaintiff's prior drug use insofar as it has relevance to plaintiff's claimed damages. See Burke v. Spartantics, 252 F.3d 131, 136 (2d Cir. 2001) (affirming trial court's admission of plaintiff's prior drug use as relevant to the issue of damages); see also Fletcher v. City of New York, 54 F. Supp. 2d 328, 333-34 (S.D.N.Y. 1999) (permitting defendants to question plaintiff regarding his past drug use, under Rule 404(b)'s "other purposes" exception, with respect to what damages, if any, were allegedly caused by defendants). Indeed, Your Honor, in Jean-Laurent v. Wilkinson, No. 05 Civ. 0583 (VM), 2009 U.S. Dist. LEXIS 20472, at *9 (S.D.N.Y. Mar. 13, 2009) permitted defendants to introduce evidence of plaintiff's history of drug use at trial, reasoning that it was relevant to plaintiff's claimed damages. Therefore, plaintiff's marijuana use is relevant insofar as it relates to his claimed damages. Additionally, plaintiff's chronic marijuana use is relevant to his purported ongoing fear of police officers as a result of his arrest at issue (See Ex. D, Pl. Dep. 184:19-23).

Plaintiff's marijuana use may also be used to discredit plaintiff's character for truthfulness under 609. Here, plaintiff testified around 2007, his parole officer had ordered him to complete a mandated one-year drug rehabilitation program. (See Defs. Memo, Ex. A, Pl. Dep. 187:13-188:9).   Since completing the drug treatment program in or around 2008, plaintiff claimed that he had "been [doing] good." (See Defs. Memo, Ex. A, Pl. Dep. 191:4-20). However, after allegedly completing the drug treatment program sometime in 2008, plaintiff has been arrested and convicted of marijuana possession charges on at least two occasions -- April 23, 2011 and July 12, 2011 (See Defs. Memo, Ex. A, Pl. Dep. 193:14-16; Ex. B, Pl. OLPA, Bates Nos. NYC521, NYC528). All of this information is relevant to refute and mitigate plaintiff's damages, as well as allow the jury to make its own determination as to plaintiff's credibility at trial.

Moreover, although not expressly set forth in the Federal Rules of Evidence, impeachment by disability (i.e., drug addiction or recollection difficulties) is a well-established method of impeachment that may be utilized in federal court. See Wilson v. United States, 232 U.S. 563 (1914) (finding evidence of defendant's morphine addiction and use thereof before testifying in court admissible evidence, reasoning that it had material bearing on the reliability of a witness at the moment she was testifying under the influence, and evidence was not being offered or admitted for its bearing on her character). Indeed, the Second Circuit has explicitly held that "[i]t is within the scope of proper cross-examination to inquire as to whether a witness's capacity to observe and remember is impaired by drug use." Dobson v. Walker, No. 04-2714, 2005 U.S. App. LEXIS 21294, at *7 (2d Cir. Sep. 30, 2005); See United States v. Di Paolo, 804 F.2d 225, 229-30 (2d Cir. 1986) (same); see also United States v. Sampol, 636 F.2d 621 (D.C.

Cir. 1980) (proper to impeach by showing witness's drug influence at time of event or while testifying).

In this case, plaintiff testified that he is a chronic marijuana user. (See Defs. Memo, Ex. A, Pl. Dep. 60:1-4). More importantly, plaintiff testified at his deposition that he smoked marijuana before his arrest. (See Defs. Memo, Ex. A, Pl. Dep. 42:11-20). Specifically, plaintiff admitted to smoking "two, three blunts" at his niece's apartment on the date of the incident -- just a couple of hours before his arrest. (See Defs. Memo, Ex. A, Pl. Dep. 57:5-25, 58:9-13). Therefore, regardless of plaintiff's history of marijuana use, plaintiff's ability to accurately recall the events surrounding his December 23, 2009 arrest and report his perceptions are clearly at issue and are a proper subject of cross-examination.

## POINT III

### PLAINTIFF'S FAILURE TO PAY CHILD SUPPORT IS RELEVANT, PROBATIVE AND NOT UNDULY PREJUDICIAL .

Plaintiff seeks to preclude defendants from examining him on his child support obligations, arguing that such testimony has "no probative value," is "extremely and unfairly prejudicial," and will be improperly used as character evidence with no impeachment value. (See Pl. Memo at 16-17). However, defendants do not seek to introduce plaintiff's child support obligations as propensity evidence, i.e., that he is the type of person who does not pay his debts. Instead, defendants seek to proffer plaintiff's testimony concerning his child support obligations as a form of impeachment by bias. Defendants wish to show that plaintiff has a financial incentive in bringing this lawsuit: his debt obligations.

Similar to impeachment by disabilities, impeachment by bias is also not expressly covered under the Federal Rules of Evidence. However, in interpreting Rules 402 and 608, the United States Supreme Court has long held that impeachment for bias is admissible even when

the impeachment material is not independently admissible under Rule 608 as concerning the witness's character for truthfulness or untruthfulness. United States v. Abel, 469 U.S. 45, 51, 55-56, & n.4 (1984).

Indeed, the law is well settled in the Second Circuit, as well as other circuits, that bias is never collateral matter, and that the use of extrinsic evidence is permitted to show a witness's bias (i.e., a motive to testify falsely). See United States v. Figueroa, 548 F.3d 222, 227-30 (2d Cir. 2008) (finding error and abuse of discretion in district court's preclusion of defendant in cross-examining witness's bias towards racial or minority groups, and motive to lie); see also United States v. James, 609 F.2d 36, 46 (2d Cir. 1979) (finding error in district court's preclusion of extrinsic evidence to show witness has motive to lie); see also United States v. Haggett, 438 F.2d 396, 399 (2d Cir. 1971) (same); United States v. Blackwood, 456 F.2d 526, 530 (2d Cir. 1971) (same), cert. denied, 409 U.S. 863 (1972); United States v. Harvey, 547 F.2d 720, 722-23 (2d Cir. 1976) (reversed and remanded for new trial finding district court improperly excluded mother's proffered testimony because evidence offered to show bias is never a collateral matter, and tended to show a motive for witness to testify falsely). "The motivation of a witness in testifying, including h[is] possible self-interest and any bias or prejudice against the defendant, is one of the principle subjects for cross-examination." Henry v. Speckard, 22 F.3d 1209, 1214 (2d Cir.), cert. denied, 513 U.S. 1029 (1994).

Accordingly, testimony about plaintiff's failure to pay child support is relevant and admissible in order to allow the jury to draw inferences about plaintiff's motive in bringing his lawsuit.

**POINT IV**

**ADA FARRINGTON'S TESTIMONY IS RELEVANT AND WOULD NOT RESULT IN REVERSIBLE ERROR.**

Plaintiff argues that allowing Assistant District Attorney Loriann Farrington ("ADA Farrington") to testify in connection with plaintiff's subsequent criminal prosecution would constitute reversible error. (See Pl. Memo at 17-18). However, plaintiff misconstrues the controlling law in the Second Circuit and completely misses the mark.

In Cameron v. City of New York, 598 F.3d 50, 65-66 (2d Cir. 2010), the Second Circuit reversed Judge Crotty and ordered a new trial for permitting two assistant district attorneys to testify as to the police officers' credibility and to the existence of probable cause. However, the Second Circuit was explicit in their instruction regarding permissible testimony on retrial:

> While much of the challenged testimony was inadmissible, not everything that these [ADA] witnesses said should be prohibited upon retrial. It is therefore worth noting, in the interest of judicial economy, which particular pieces of testimony are inadmissible, and which the District Court has discretion to admit.

Id. at 66. More specifically, the Second Circuit ruled that testimony from the two assistant district attorneys about the substance of their interactions with the police officers is "entirely proper" insofar as such testimony will "allow the jury to draw appropriate inferences one way or another as to the officers' malice" for purposes of a malicious prosecution claim. Id. at 67 (permitting same ADA testimony on retrial as to whether police officers aggressively sought prosecution, or allowed the District Attorney's handling of the case to run its own course, because of its probative value on the important question of whether the officers acted with malice).

13

Here, as set forth in defendants' portion of the parties' joint proposed jury charge, defendants dispute can establish the following three elements of plaintiff's malicious prosecution claim: (1) lack of probable cause, (2) malice, and (3) favorable termination of underlying criminal proceedings. Consistent with the Second Circuit's ruling in <u>Cameron</u>, defendants do not seek to have ADA Farrington -- the prosecutor responsible for plaintiff's subsequent criminal prosecution -- opine as to the existence of *probable cause* to arrest and subsequently prosecute plaintiff, or opine on the *credibility* of police officers UC#0077 or Goulart. Moreover, since defendants do not dispute the "initiation" prong of plaintiff's malicious prosecution claim,  ADA Farrington's testimony will not be used for that purpose. Defendants, however, seek to introduce the testimony of ADA Farrington to refute the malice prong plaintiff needs to prove in connection with his malicious prosecution claim. Because ADA Farrington's testimony is probative of whether the defendants' acted with malice, the jury should be entitled to draw inferences as to whether police officers UC#0077 or Goulart aggressively sought out, or otherwise urged, encouraged, or pressured ADA Farrington to proceed with, plaintiff's criminal prosecution.

With regards to the favorable termination element, defendants seek to introduce testimony from ADA Farrington so that the jury will have before them all the evidence necessary to determine whether plaintiff can establish the "favorable termination" prong of his malicious prosecution claim.  Factual circumstances leading up to the termination may present a question for the jury.  <u>Murphy v. Lynn</u>, 118 F.3d 938, 950 (2d Cir. 1997).  By way of example, during trial, the judge in <u>Murphy</u> determined that plaintiff had met his burden of showing a favorable termination of the criminal proceeding and would prevail on that issue as a matter of law unless defendants produced the prosecutor to testify to some non-merits-based explanation for the

failure to pursue the prosecution of plaintiff. See Murphy, 118 F.3d at 951 (because defendants chose not to call the assistant district attorney as a trial witness to offer any non-merits-based explanation for the failure to proceed against plaintiff Murphy, the district court properly decided the favorable-termination question as a matter of law).

Under New York law, even dismissal of a criminal prosecution "at the prosecution's request because they did not believe they could meet their burden at trial" does not constitute a favorable final termination. McNamara v. City of New York, No. 06 Civ. 5585 (LTS), 2009 U.S. Dist. LEXIS 22639 at *17-18 (S.D.N.Y. Mar. 20, 2009) (citing Breytman v. Olinville Realty, LLC, 46 A.D.3d 484 (1st Dep't 2007) and Slatkin v. Lancer Litho Packaging Corp., 33 A.D.3d 421 (1st Dep't 2006), and finding malicious prosecution claim against officers failed because there was no indication in the record that the criminal prosecution against plaintiff was terminated in his favor). Accordingly, ADA Farrington's testimony, which will focus on, in part, the information known and assessed by her when allowing plaintiff's case to terminate, is clearly relevant so that the jury -- as the court in Murphy reasoned -- can assess whether plaintiff met his burden in proving the favorable termination prong of his malicious prosecution claim. In addition, if her testimony is not admitted, defendants will be prejudiced.

## POINT V

### NON-PARTY WITNESS LETICIA TAVERAS SHOULD BE PERMITTED TO TESTIFY.

Plaintiff seeks to preclude defendants from calling Leticia Taveras, plaintiff's then-girlfriend, to testify at trial arguing that her testimony has "absolutely no relevance to *any claim* in this case" and has a potential for unfair prejudice. (See Pl. Memo at 18-19) (emphasis added). Plaintiff further suggests that Ms. Taveras's testimony will be used to impugn the character of him and his counsel. Contrary to plaintiff's misconceptions, defendants intend to proffer Ms.

Taveras as a rebuttal witness to impeach plaintiff's statement as to the source of the money found following to his arrest and used in connection with his subsequent criminal prosecution.

By way of background, plaintiff testified at his deposition that Ms. Taveras gave him the $950 found on him following his arrest at issue. (See Ex. D, Pl. Dep. 90:6-13, 91:19-23). He is likely to testify the same at trial. Ms. Taveras's deposition was taken by plaintiff's counsel, on May 16, 2011, pursuant to a subpoena served on her by plaintiff's counsel. At that deposition, Ms. Taveras testified that she did not give plaintiff the money. (See Deposition of Leticia Taveras, dated May 16, 2011 ("Taveras Dep."), annexed as Ex. "G" at 22:18-19).  Apparently, plaintiff felt Ms. Taveras's testimony was relevant enough at that time to take her deposition without any hesitation, despite knowing that she would likely impeach his credibility and possibly impugn the integrity of his counsel. Now that Ms. Taveras has testified under oath, plaintiff seeks to preclude her merely because he does not like the substance of her testimony, namely, that she did not give him the money. This cannot and should not be a basis to preclude Ms. Taveras's testimony at trial; she should be allowed to impeach plaintiff by contradiction and challenge his credibility under Rule 407.

As set forth in Point III above, the United States Supreme Court and Second Circuit have uniformly held that impeachment with the use of extrinsic evidence to show a witness's character for truthfulness is permitted. Abel, 469 U.S. at 51, 55-56, & n.4; Figueroa, 548 F.3d at 227-30; James, 609 F.2d at 46; Haggett, 438 F.2d at 399; Blackwood, 456 F.2d at 530; Harvey, 547 F.2d at 722-23; Speckard, 22 F.3d at 1214. The law of evidence has long recognized that a cross-examiner is not required to "take the answer" of a witness concerning possible bias [or motive to lie], but may proffer extrinsic evidence, including the testimony of other witnesses, to prove the facts showing a bias [or motive to lie] in favor of or against a party. Abel, 469 U.S. at 51, 55-56,

& n.4; McCormick, Evidence, § 41 (2d Ed. 1972). Special treatment is accorded evidence which is probative of a special motive to lie "for if believed it colors every bit of testimony given by the witness whose motives are bared." Blackwood, 456 F.2d at 530.

In addition, plaintiff argues that the source of the $950 recovered from him after his arrest is irrelevant for purposes of probable cause to arrest (Pl. Memo at 19). However, it is highly relevant to probable cause to *prosecute* plaintiff, in two ways. First, the $950 was used by the prosecutor as a factor in determining his bail at arraignment. Second, the $950 -- and its source -- was used by the prosecutor in determining whether to proceed with the criminal prosecution of plaintiff. Probable cause to prosecute is knowledge of "such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." Boyd v. City of New York, 336 F.3d 72, 76 (2d Cir. 2003). Just as a jury should hear from ADA Farrington on the reasons that plaintiff's criminal prosecution was allowed to terminate, a jury should hear testimony from Ms. Taveras that sheds light on probable cause to prosecute plaintiff.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court deny plaintiff's motions in *limine* and grant defendants' motions *in limine*, together with such other and further relief as this Court may deem just and proper.

Dated: New York, New York
          August 30, 2011

                                    MICHAEL A. CARDOZO
                                    Corporation Counsel of the
                                     City of New York
                                       *Attorney for Defendants George Goulart and*
                                       *Undercover Officer # 0077*
                                    100 Church Street
                                    New York, New York 10007
                                    Tel.: (212) 788-0467/(212) 341-0797

          By:          _____

                                    RAJU SUNDARAN, Senior Counsel
                                    BRIAN FARRAR, Assistant Corporation Counsel

To:     COHEN & FITCH LLP (via ECF and Hand Delivery)
        *Attorney for Plaintiff*
        225 Broadway, Suite 2700
        New York, New York 10007
        Tel:  (212) 374-9115
        Fax: (212) 406-6890

18